UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LENON BRUNO DO NASCIMENTO YOKOBATAKE, | ) ) ) | Case No.: 3:26 CV 1475 |
| Petitioner | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| TODD BLANCHE *et. al.*, | ) ) | |
| Respondents | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Lenon Bruno Do Nascimento Yokobatake's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") (ECF No. 1), and Petitioner's Emergency Filing Regarding Possible Imminent Death of Premature Child ("Filing") (ECF No. 16). For the following reasons, the court conditionally grants the Petition and denies the Filing as moot.

## I. BACKGROUND

Petitioner is a 36-year-old male citizen of Brazil currently detained by Immigration and Customs Enforcement ("ICE") at the Corrections Center of Northwest Ohio. (Pet. Ex. 1, ECF No. 1-4.) In August 2024, Petitioner entered the United States along with his wife and two minor children. (Pet. ¶ 16.) The same day that Petitioner and his family entered the U.S., Customs and Border Protection ("CBP") processed and released them "pursuant to the authority contained in section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226]." (*Id.*) Petitioner and his family were also placed in removal proceedings. (*Id.*) Shortly thereafter, Petitioner and his family

settled in Cincinnati, Ohio, where they were assisted by the Clifton Methodist Church in Cincinnati. (*Id.*) While residing in Cincinnati, Petitioner and his wife reported to ICE and complied with immigration requirements. (*Id.*)

In April 2026, Petitioner and his wife appeared at an ICE check-in, and both were detained. (*Id.* ¶ 17.) Petitioner's wife stated that she was pregnant, which ICE soon confirmed. (*Id.*) ICE initially detained Petitioner and his wife in separate cell blocks at Butler County Jail in Hamilton, Ohio. (*Id.*) During their detention, Petitioner's counsel asked for Petitioner's wife's release on humanitarian and medical grounds, but to no avail. (*Id.*) In early June 2026, Petitioner's wife went into premature labor at the detention facility. (*Id.*) She experienced severe pain, labor contractions, bleeding, and the rupturing of her amniotic sac membranes. (*Id.*) According to Petitioner, ICE officially released his wife from custody due to her premature labor, and transported her via ambulance for emergency medical care. (*Id.*) Petitioner's wife was eventually admitted at the second hospital she was taken to, and stabilized. (*Id.*) Later that week, Petitioner's wife gave birth to their child. (*Id.*) The baby was born at only 26 weeks, weighing less than 2 pounds. (*Id.*)

On June 29, 2026, Petitioner filed a Writ of Habeas Corpus pursuant to 8 U.S.C. § 2241, asserting three counts: Violation of Fifth Amendment Right to Substantive Due Process (Count I), Violation of Fifth Amendment Right to Procedural Due Process (Count II); and Violation of the Administrative Procedures Act (Count III). (*See generally*, Petition.) Petitioner's requested relief includes assuming jurisdiction over the matter, granting the Writ and ordering Respondents to immediately release Petitioner from custody, and entering preliminary and permanent injunctive relief enjoining Respondents from detaining Petitioner any further. (Pet. at PageID 20.) The same day, Petitioner filed a Motion for Order to Show Cause (ECF No. 3), asking the court to issue an Order to Show Cause directing Respondents to file a return of writ within three days. On June 30,

2026, the court issued an Order (ECF No. 5) directing the United States Attorney to respond to the Petition no later than July 6, 2026. Consistent with the court's Order, Respondents filed a Return of Writ (ECF No. 7) on July 6, 2026.

On July 7, 2026, Petitioner received a bond hearing pursuant to § 1226(a).[1] (Status Rep. at PageID 60, ECF No. 8; Tr. at PageID 95, ECF No. 15-1.) At the hearing, the immigration judge ("IJ") listed each exhibit presented by the parties, briefly summarizing what each was. (Tr. at PageID 95–97) ("I'm gonna go through each piece of evidence so everybody knows what I'm considering.") Petitioner's exhibit list included an affidavit of his pastor (the bond sponsor), a letter from his spouse, records related to the premature birth of his child, family photographs, as well as other affidavits from friends and community members. (*Id.*) The court then listed the Government's evidence, an I-213 and an Interpol Red Notice for the murder of Maria Lisa De La Cruz. (*Id.* at PageID 97; Opp'n Ex. A at PageID 77–86.) After confirming with counsel that all evidence filed with the court had been described, the IJ said,

> I'll hear argument from the parties. Uh, I've listened, uh – Attorney Camilo, I've seen all the evidence that you've submitted in support of the respondent. I mean, and I understand there's a premature baby and this is a very difficult situation. Um, but I'm just gonna tell you, with a, uh, Interpol red notice for murder, I really frankly – uh, my hands are tied. I don't see how in the world the court could grant a bond under these circumstances. I'm gonna tell you I had a attempted murder case out of Brazil, Interpol red notice. I granted $100,000 bond. There was even a dismissal of the – of the murder. The attempted murder. And the BIA – the Interpol red notice was still pending, and I got reversed. So [...] I don't see any possibility under these circumstance of granting your client a bond.

(Tr. at PageID 98.) The IJ reiterated this point again, stating:

---

[1]   Petitioner's filing states July 6, 2026 as the bond hearing date. (Brief in Supp. at PageID 64.) The court assumes this is an error as all other filings, and the Hearing Transcript, state July 7, 2026 as the bond hearing date. Thus, the court uses July 7, 2026, throughout its Order as the applicable date for Petitioner's bond hearing.

> "I cannot grant a respondent a bond under any circumstances at this point. Unless there's some sort of a change relating to the Interpol red notice or some sort of indication from a court in Brazil that the murder case is no longer pending. Okay?

(*Id.* at PageID 100.) Petitioner's counsel then replied, "Judge, so we have that, um, so—" but was cut off by the IJ, who stated, "until the Interpol red notice is recalled, I'm not gonna grant a bond. Just telling you. That's the same circumstance I had the last case. Okay?" To which Petitioner's counsel said, "Okay." (*Id.*) The IJ then concluded, "[b]ond denied. Risk of flight and danger to the community. Okay." (*Id.* at PageID 101.) According to Petitioner, the whole hearing lasted approximately 12 minutes. (Brief in Supp. at PageID 64.)

The following day, on July 8, 2026, Respondents filed a Status Report (ECF No. 8), notifying the court that Petitioner had received a bond hearing in immigration court on July 7, 2026, and that bond had been denied because the IJ found that Petitioner was a danger to the community and a flight risk. (Status Rep. at PageID 60.) Attached to the Status Report was the IJ's order, which read: "The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered: Denied, because Danger to the community and risk of flight." (*Id.* Ex. A, ECF No. 8-1.) The IJ's order also noted that any appeal was due August 6, 2026. (*Id.*)

On July 9, 2026, the court held a telephonic status conference on the record with counsel for the parties to discuss the posture of the case in light of Petitioner having received a bond hearing in immigration court on July 7, 2026. (Order, ECF No. 9.) During the conference, Respondents argued that the Petition was now moot because a bond hearing was held, and the court lacks jurisdiction to review that decision. (*Id.* at PageID 63.) Petitioner countered by asserting that the July 7 hearing did not comport with procedural due process, and therefore the Petition is not moot, and the court retains jurisdiction to consider Petitioner's procedural due process claim. (*Id.*) At the close of the

conference, the court directed the parties to file supplemental briefings on whether the court has jurisdiction to consider the procedural due process claim. (*Id.*) Petitioner filed his Brief in Support (ECF No. 10) on July 10, 2026, and Respondents filed their Opposition (ECF No. 11) on July 14, 2026.

After reviewing the briefs and relevant case law, the court determined it could not decide the jurisdiction question on the record before it. (Order, ECF No. 12.) Accordingly, it ordered the parties to file a transcript of Petitioner's July 7, 2026 bond hearing. (*Id.* at PageID 88.) Petitioner filed the transcript on July 24, 2026. (ECF No. 15.)

Approximately one week later, on August 3, 2026, Petitioner requested immediate release by submitting an Emergency Filing Regarding Possible Imminent Death of Premature Child ("Filing") (ECF No. 16). In the Filing, Petitioner explained that his wife contacted counsel earlier in the morning to share that their premature child needed emergency surgery. (Filing at PageID 103.) Shortly thereafter, one of the child's neonatologists contacted counsel and stated that "they were very worried the child would pass today." (*Id.*) The following day, on August 4, 2026, Petitioner filed a Status Report (ECF No. 17), informing the court that the child had died early that morning. Respondents did not filed any response to Petitioner's recent filings about the child.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241, federal courts may grant writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This power extends to § 2241 habeas petitions by noncitizens who seek to challenge the legality of their detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

### III. LAW AND ANALYSIS

**A.     Jurisdiction**

The court must first determine whether it lacks jurisdiction to consider Petitioner's Fifth Amendment Due Process Claim because he received a bond hearing pursuant to § 1226(a). Respondents argue that 8 U.S.C. § 1226(e) prevents the court from exercising jurisdiction over Petitioner's habeas action. (Opp'n at PageID 72.) Petitioner counters, asserting that § 1226(e) does not apply to colorable constitutional or statutory claims, including Petitioner's. (Brief in Supp. at PageID 66.)

Section 1226(e) states:

> (e) Judicial review
>
> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). The Supreme Court has recognized that "Section 1226(e) contains no explicit provision barring habeas review," and thus does not bar a noncitizen's "constitutional challenge to the legislation authorizing [] detention without bail." *Demore v. Kim*, 538 U.S. 510, 517 (2003). Moreover, a challenge to "the extent of the Government's detention authority under the statutory framework as a whole ... is not a matter of 'discretionary judgment,' 'action,' or 'decision' " and, therefore, "falls outside the scope of § 1226(e)." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).

In *Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 617–18 (W.D. Mich. 2026), a noncitizen in ICE custody was denied bond following a hearing pursuant to § 1226(a). During the hearing, the petitioner presented evidence that he was not a flight risk or danger to the community, as well as evidence of family connections and a pending asylum application. *Id.* at 618. Conversely, the

-6-

government presented no evidence to show that the petitioner was a flight risk or danger to the community. *Id.* At the end of the hearing, the immigration judge denied the petitioner's bond request because he had "not established that he is not a flight risk." *Id.*

Shortly after bond was denied, the petitioner filed a § 2241 habeas action arguing that his detention violated the Fifth Amendment Due Process Clause. *Id.* at 621. Specifically, the petitioner asserted that "due process mandates that the government be required to prove, by clear and convincing evidence, that the noncitizen is a flight risk or a danger to the community to justify denial of bond." *Id.* The respondents opposed the petition, arguing like Respondents here, that § 1226(e) deprives the court of jurisdiction over the habeas action. *Id.* at 618. The *Soto-Medina* court disagreed, finding that the petitioner's challenge was not to a "discretionary judgment" or "decision" by the Attorney General regarding the grant or denial of bond, but rather an argument that the discretionary process in which nonticizens detained under §1226(a) must prove they are not a flight risk or danger to the community, is unconstitutional. 817 F. Supp. at 618. Thus, § 1226(e) did not deprive the court of jurisdiction. *Id.* at 619.

Since the *Soto-Medina* decision, other federal district courts in this Circuit have similarly allowed habeas petitions to proceed where the petitioner previously had a bond hearing pursuant to § 1226(a). *See e.g.*, *Singh v. Hott*, No. 4:26-CV-256-DJH, 2026 WL 1880217 (W.D. Ky. June 30, 2026) (considering petitioner's challenge to the bond hearing's adequacy because § 1226(e) "does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received."); *Ba v. Raycraft*, No. 26-10838, 2026 WL 1213803, at *2 (E.D. Mich. May 4, 2026) (following *Soto-Medina* and exercising jurisdiction over post-bond hearing habeas petition); *Castaneda-Castano v. Daley*, No. CV 26-145-DLB, 2026 WL 1223095 (E.D. Ky. May 4, 2026) (exercising jurisdiction over post-bond hearing habeas petition where petitioner argued

he was forced to bear the burden of proving he was not a flight risk).

However, not all alleged constitutional claims are challenges to "the extent of the Government's detention authority under the statutory framework as a whole." *Jennings*, 583 U.S. at 296. For example, in *Marroquin v. Noem*, No. CV 26-219-DLB, 2026 WL 1494458, at *4 (E.D. Ky. May 28, 2026), the court concluded that § 1226(e) did preclude its review of a habeas action where the petitioner "[did] not claim that her bond hearing lacked necessary procedural safeguards or that the IJ did not have statutory authority to deny bond[;]" but instead sought "immediate release, which would require th[e] Court to review the IJ's discretionary decision to deny bond[.]" Such review is barred by § 1226(e). 2026 WL 1494458, at *4. *See also Alabdulaziz v. Tindall*, No. 3:26-CV-178-CHB, 2026 WL 973278, at *4 (W.D. Ky. Apr. 10, 2026) (finding that petitioner "couches his petition in the language of a constitutional critique," but that "his petition ultimately takes issue with the IJ's discretionary decision to deny bond"); *Guiracocha v. Noem*, No. CV 26-62-DLB, 2026 WL 622860, at*4 (E.D. Ky. Mar. 5, 2026) (concluding § 1226(e) precludes jurisdiction because petitioner "merely argues that the IJ came to the wrong conclusion after reviewing the evidence.").

Here, Petitioner argues that the July 7, 2026 bond hearing did not comport with constitutional due process because it was 12 minutes long, lacked testimony from Petitioner and argument from counsel in support of bond, and because the judge stated that he could not grant bond, regardless of the evidence before him, because of the Interpol Red Notice submitted by the Government. (*Id*. at PageID 64–65.) Therefore, Petitioner continues, the hearing was "clearly unfair," and thus not the type of "individualized bond hearing" required by the Fifth Amendment. (*Id.*) Respondents construe these assertions as "merely complaints about the weight that the IJ gave the evidence when making his discretionary decision to grant or deny bond," and thus § 1226(e) precludes jurisdiction. (Opp'n

at PageID 74.)

After reviewing the IJ's order denying bond (ECF No. 8-1), the Hearing Transcript (ECF No. 15), and the relevant case law, the court concludes Petitioner's Fifth Amendment Procedural Due Process challenge to his July 7, 2026 bond hearing falls outside § 1226(e)'s jurisdictional bar. Petitioner does not explicitly argue like the *Soto-Medina* petitioner that the IJ placed the burden of proof on him, and that such an allocation is unconstitutional. However, he does still raise a constitutional challenge to the discretionary process—namely that the Fifth Amendment Due Process Clause requires an "individualized bond hearing"—and whatever standard the IJ employed did not comport with that mandate. (Brief in Supp. at PageID 66.) *See also Lopez-Campos*, 175 F. 4th at 734 (concluding noncitizens detained pursuant to § 1226(a) have a liberty interest to be free from detention, and that "detention without an individualized bond hearing can become constitutionally impermissible").

The Hearing Transcript is sparse. No where in the written order denying bond, nor in the Transcript, does the IJ articulate the burden of proof that applies in § 1226(a) bond hearings, nor does the IJ indicate whether such burden was met. The Transcript does reveal that the IJ listed each exhibit presented by the parties, briefly summarizing what each was. (Tr. at PageID 95–97). That said, the IJ does not appear to call on the Government to make any statement about its submitted evidence. It seems that Petitioner sought to make an argument in light of the IJ's clear conclusion that as long as the Interpol Red Notice exists, he would not grant bond:

> IJ:     But tell all the respondent's supporters, I – I – I know there's many. I got a long list of people here for the respondent. Unfortunately, the respondent is a Interpol red notice. Uh, and this is for the crime of, uh, murder. So I cannot, uh – I cannot grant a respondent a bond under any circumstances at this point. Unless there's some sort of a change relating to the Interpol red notice or some sort of indication from a court in

-9-

> | | Brazil that the murder case is no longer pending. Okay? |
> |---|---|
> | Counsel: | Judge, so we have that, um, so – |
> | IJ: | Well, that's what I had the last case but where – where – where are you telling me the charge is dismissed? |
> | Counsel: | Uh, their – their Exhibit A – uh, Double A and Double D, which is, um, Exhibit – where was that? Uh, Exhibit 7. |
> | IJ: | Okay. Is – until the Interpol red notice is recalled, I'm not gonna grant a bond. Just telling you. That's the same circumstance I had in the last case. Okay? |
> | Counsel: | Okay. |

(Tr. at PageID 100.) Therefore, it appears Petitioner was not "given the opportunity to be heard in a meaningful manner," as procedural due process requires. *See Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (internal quotation marks omitted) (quoting *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550 (6th Cir. 1983), *aff'd and remanded*, 470 U.S. 532 (1985)). Even if the IJ had preliminarily made up his mind, he should have given counsel at least a brief opportunity to speak on the issue.

Furthermore, there was no mention of the burden of proof, which party bears it, and whether it was satisfied, demonstrating a lack of the procedural safeguards the Constitution requires. While the Sixth Circuit has not yet decided what burden of proof standard applies in a § 1226(a) bond hearing, numerous district courts in this Circuit have determined that under the Fifth Amendment Due Process Clause, the government bears the burden of justifying a noncitizen's § 1226(a) detention by clear and convincing evidence. *Soto-Medina*, 817 F. Supp. 3d at 622, 629. *See also Graterol Guedez v. Raycraft*, No. 26-11285, 2026 WL 1696650, *4–5 (E.D. Mich. June 11, 2026) (following *Soto-Medina* and granting § 2241 petition for new individualized bond hearing where

-10-

hearing transcript showed no explanation or analysis, but included the IJ's finding that the petitioner did not carry his burden of proof); *Gill v. Mullin*, No. 4:26-CV-00523, 2026 WL 1215055, at \*4 (N.D. Ohio May 4, 2026) (ordering second bond hearing because previous placed the burden of proof on petitioner and due process requires it be placed on the government); *c.f.*, *Hidalgo-Sanchez v. Raycraft*, No. 3:26-CV-00976, 2026 WL 1242978, at \*4 (N.D. Ohio May 6, 2026) (ordering a first bonding hearing and finding due process requires the government to show by clear and convincing evidence that petitioner must remain detained); *Rodriguez v. Greene*, No. 4:26-CV-0333, 2026 WL 574961, at \*13 (N.D. Ohio Mar. 2, 2026) (same).

The court acknowledges the seriousness of the Interpol Red Notice exhibit presented at the Petitioner's hearing, and if Petitioner's arguments were "merely complaints about the weight that the IJ gave the evidence" as Respondents contend, then § 1226(e) would likely apply, and the court would have to dismiss the action for lack of jurisdiction. But when read against the backdrop of the whole Hearing Transcript, it becomes clear that Petitioner does not challenge a "discretionary judgment" or "decision" regarding the denial of bond. Rather, his § 2241 petition argues that the discretionary process itself did not comport with constitutional due process. Therefore, the court will exercise jurisdiction over Petitioner's habeas action.

**B.     Exhaustion**

Respondents also argue that the court should dismiss the Petition for lack of jurisdiction because Petitioner has not exhausted his administrative remedies—namely, filing an appeal of the bond hearing decision to the Board of Immigration Appeals ("BIA"). (Opp'n at PageID 74.) Petitioner maintains he is excused from exhausting his administrative remedies because the BIA lacks jurisdiction to adjudicate constitutional due process challenges, and therefore appealing there is futile. (Brief in Supp. at PageID 68.)

Generally, a petitioner must exhaust administrative remedies before filing a § 2241 habeas petition. *Ortiz Soto v. Saxon*, No. 1:25-CV-768, 2026 WL 1205571, at *5 (S.D. Ohio May 4, 2026) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992) *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006)). However, when exhaustion is not required by statute, as is the case here, courts examine "whether exhaustion should nonetheless be required as a matter of prudence." *Ortiz Soto*, 2026 WL 1205571, at *5.

In this Circuit, courts apply the three-factor test established in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983). *See Singh v. Stevens*, 821 F. Supp. 3d 898, 906 (N.D. Ohio 2026). Under this test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Echavarria Morales v. Noem*, No. 3:25CV2691, 2026 WL 100583, at *2 (N.D. Ohio Jan. 14, 2026)). After considering these factors, the court concludes that prudential exhaustion should not be required in Petitioner's case. As in *Singh* and *Soto-Medina*, Petitioner's challenge is constitutional in nature, and thus does not require an administrative record be developed. *Singh*, 821 F. Supp. 3d at 906; *Soto-Medina*, 817 F. Supp. 3d at 620. Furthermore, because Petitioner's habeas action includes a due process claim, appealing to the BIA, (*i.e.*, the relevant administrative scheme), is likely futile. *Id.* Lastly, BIA review of Petitioner's detention is unlikely to preclude the need for judicial review.

Respondents argue for a different Ninth Circuit test for when courts should require prudential exhaustion: *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). There, the Ninth Circuit

-12-

said that, "[w]hen a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the [habeas] petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id.* Respondents assert that other courts in this jurisdiction have followed *Leonardo* and required exhaustion of administrative remedies. (Opp'n at PageID 75) (citing *Abdoulaye Ba v. Dir. of Detroit Field Off.*, No. 4:25-CV-02208, 2025 WL 2977712, at *2 (N.D. Ohio Oct. 22, 2025), *reconsideration denied*, No. 4:25-CV-02208, 2025 WL 3264535 (N.D. Ohio Nov. 24, 2025)). However, *Ba* appears to be a minority position in this district, and its prudential exhaustion analysis seems largely confined to decisions from that specific court. *See Amaya-Velis v. Raycraft*, 816 F. Supp. 3d 745, 751 (N.D. Ohio 2026) (Calabrese, J.) (collecting decisions issued by the same district court requiring prudential exhaustion).

Other courts in the Northern District of Ohio have excused prudential exhaustion where, like Petitioner here, the petitioner raises a colorable procedural due process claim and the court retains jurisdiction to consider the habeas action. *See e.g.*, *Singh*, 821 F. Supp. 3d at 906 (Pearson, B.); *Lopez v. Noem*, No. 3:26 CV 128, 2026 WL 395202, at *4 n. 4 (N.D. Ohio Feb. 12, 2026) (Gaughan, P.); *Lemus v. Lynch*, No. 4:26-CV-203, 2026 WL 496731, at *4 (N.D. Ohio Feb. 23, 2026) (Lioi, S); *Kaur v. Raycraft*, No. 4:25-CV-02679, 2026 WL 709728, at *7 (N.D. Ohio Mar. 13, 2026) (Boyko, C.). *But see Camara v. Voorhies*, No. 4:26CV00484, 2026 WL 1265440 (N.D. Ohio May 8, 2026), *reconsideration denied*, No. 4:26CV00484, 2026 WL 1730034 (N.D. Ohio June 16, 2026) (Barker, P.) (declining to waive administrative exhaustion). The *Singh*, *Lopez*, *Lemus*, and *Kaur* decisions are consistent with many others around the Sixth Circuit. *See e.g.*, *Soto-Medina*, 817 F. Supp. 3d at 620–21; *Castaneda-Castano*, 2026 WL 1223095, at *5. Finding these decisions well-reasoned, the court declines to follow *Leonardo* and *Ba*, and will therefore not apply the doctrine of

prudential administrative exhaustion to Petitioner.

## IV. CONCLUSION

For the foregoing reasons, the court concludes it has jurisdiction over Petitioner's Fifth Amendment Procedural Due Process Claim (Count II). The court conditionally grants the Petition as to Count II because it appears on this limited record that Petitioner was not "given the opportunity to be heard in a meaningful manner," as procedural due process requires. *See Grinage*, 82 F.3d at 1349.

Moreover, the record does not indicate what legal standard, if any, the IJ applied to make his determination. As such, the court joins the growing number of Sixth Circuit district courts in finding that at a § 1226(a) bond hearing, the Government bears the burden of proof to show by clear and convincing evidence that the noncitizen is a flight risk or danger to the community. *See Soto-Medina*, 817 F. Supp. 3d at 622, 629; *Graterol Guedez*, 2026 WL 1696650, *4–5; *Gill*, 2026 WL 1215055, at *4; *c.f.*, *Hidalgo-Sanchez*, 2026 WL 1242978, at *4; *Rodriguez*, 2026 WL 574961, at *13.

The court does not substitute its view for the IJ's, nor does it opine on whether a new bond hearing should result in bond or not. Nonetheless, the court finds that when an individual's liberty interest in being free from detention is at stake, as Petitioner's is here, process matters. *See Soto-Medina*, 817 F. Supp. 3d at 624 ("There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the 'most elemental of liberty interests' is to be free from detention.") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). This area of the law is rapidly evolving and so it is important that the process applied to Petitioner's circumstances is clearly recorded so that it can be evaluated for its compliance with constitutional norms.

Accordingly, the court will enter a Judgment conditionally granting Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1). Furthermore, because the court

-14-

conditionally grants Petitioner's § 2241 Petition, the court does not address his other claims and requested relief.

The court orders Respondents to provide Petitioner with an individualized bond hearing before an immigration judge within 10 days of this Order. At that hearing, the Government will have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence. If a hearing is not held within 10 days of this Order, then Respondents shall release Petitioner. Lastly, the court denies Petitioner's Emergency Filing (ECF No. 16) as moot.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

August 13, 2026

-15-